UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEBORAH B.R.,

           Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

CASE NO. 3:23-cv-05533-GJL

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 3. This matter has been fully briefed. *See* Dkts. 7, 14, 15.

After considering and reviewing the record, the Court concludes the Administrative Law Judge (ALJ) erred in evaluating Plaintiff's subjective testimony. The Court accordingly **REVERSES** and **REMANDS** this matter for further administrative proceedings.

                      I.        PROCEDURAL HISTORY

Plaintiff's application for Disability Insurance Benefits (DIB) was filed on July 2, 2020. AR 197–98. After her applications were denied initially (AR 64–71) and on reconsideration (AR

73–85), Plaintiff's requested hearing before the ALJ was held on July 20, 2022 (AR 32–63). On August 4, 2022, the ALJ issued a decision finding Plaintiff not disabled. AR 13–31. The Appeals Council denied Plaintiff's request for review on August 16, 2022, making the ALJ's decision the final decision of the Commissioner. AR 1–7. Plaintiff appeals the denial of disability benefits to this Court.

## II.  BACKGROUND

Plaintiff was born in 1962 and was 55 years old on April 18, 2018, the amended alleged date of disability onset. AR 26, 37–38. Her date last insured was December 31, 2021. AR 18. Plaintiff has at least a high school education. AR 26. According to the ALJ, Plaintiff, through her date last insured, suffered from, at a minimum, the severe impairments of multiple endocrine neoplasia disorder (MEN), diabetes, and osteoporosis. AR 18–19. However, the ALJ found Plaintiff not disabled because she had the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). AR 20.

## III.  DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

Plaintiff raises the following issues in her Opening Brief: (1) whether the ALJ properly evaluated her subjective testimony; and (2) whether the ALJ had a duty to further develop the record. *See generally* Dkt. 7.

A. **Subjective Testimony**

Plaintiff argues the ALJ did not provide "specific, clear, and convincing reasons" for rejecting Plaintiff's testimony about the severity of her symptoms. Dkt. 7 at 4–12. The ALJ found that Plaintiff presented evidence of an underlying impairment which could be expected to produce the alleged symptoms. AR 20. In such a circumstance, "the ALJ can reject [plaintiff's] testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons," unless there is evidence of malingering. *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). In so doing, "[t]he ALJ must state specifically which symptom testimony is not credible and which facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284.

Plaintiff testified and indicated on her function report that she has nausea almost every morning, often causing her to vomit. AR 46–48, 224. These symptoms have allegedly increased since her date of onset. AR 47. The nausea is typically worse in the morning, and she has "major difficulties" at least four days a week. AR 47. She also indicated that she suffers from fatigue, disorientation, confusion, and forgetfulness, as well as occasional uncontrolled diarrhea and difficulties with concentration. AR 48–49, 224, 228. The fatigue is caused, in part, by the medication she takes to help control her nausea. AR 47–48. The nausea makes it difficult for her to sleep. AR 48, 224. The ALJ rejected Plaintiff's testimony for several reasons.

1. <u>Improvement</u>

The ALJ rejected Plaintiff's testimony, in part, because of her "improvement in nausea and related symptoms since April 2018" and medical evidence describing "low grad[e] nausea that subsided during the day in early 2021." AR 23. Plaintiff reported persistent vomiting, ongoing nausea, and decreased cognition at an emergency department visit in April 2018 (AR

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 3

593, 605), but treatment notes indicate the incident was caused by an increased dosage of a diabetes medication (AR 605) which she subsequently stopped ingesting (AR 609). Plaintiff reported improved symptoms in subsequent medical appointments, and treatment notes posit this was due to an acid reflux medication she started taking. *See* AR 439, 453, 455, 459. Treatment notes between June 2018 and January 2021 note that her nausea and diarrhea "subsided" (AR 906, 921, 926, 937–38, 1284, 1298) or returned to baseline (AR 283, 335).

Symptoms that can be controlled "are not disabling." *See Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Wellington v. Berryhill*, 878 F.3d, 867, 876 (9th Cir. 2017). But "some improvement" in a person's symptoms "does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). That Plaintiff's symptoms purportedly improved or subsided[1] does not necessarily mean they were not disabling, only that those symptoms returned to their baseline level. Indeed, provider notes reflect that Plaintiff continued to experience "chronic" and "persistent" nausea, vomiting, and diarrhea after April 2018. *See e.g.*, AR 321–22, 406, 407, 453, 903, 906, 926, 938, 1234, 1254, 1299.

The relevant question is therefore whether Plaintiff's symptoms improved to a point where they were no longer disabling. The ALJ relied (AR 23) on a single treatment note which he interpreted in the following way: "[Plaintiff] described her symptoms as 'low grade nausea' that most often subsided during the day." AR 23 (citing AR 1296–99). This is not a "rational interpretation" of the note. *Burch*, 400 F.3d at 680–81. The note said: "She is a background low-

---

[1] The term "subside" encompasses any situation in which a symptom "lessen[s] in severity" or "become[s] diminished." *Subside, Merriam Webster's Medical Dictionary*, https://www.merriam-webster.com/dictionary/subside#medicalDictionary.

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 4

grade nausea most [of] the time. Seems to be worse in the morning and then subsides later in the day." AR 1296.

This description does not mean Plaintiff's nausea improved beyond being "low-grade" later in the day; it means Plaintiff's nausea was "worse in the morning" and subsequently improved, all the while being "low-grade most the time." *Id.* This is confirmed by the same note's unqualified description of Plaintiff's nausea as "persistent" (AR 1298) and the same provider's subsequent statement that Plaintiff "has persistent vomiting on almost [a] daily basis which precludes meaningful work obligations" (AR 1352).[2] This is consistent with Plaintiff's statement that her symptoms are worse in the morning and that she is "unable to function before noon." AR 224.

Moreover, the ALJ did not explain why a condition of "background" and "low-grade" nausea is inconsistent with Plaintiff's testimony. The Court cannot discern, for instance, why such a condition would not impair concentration and memory, disrupt sleep, or require taking medication that allegedly causes fatigue. At the very least, the meaning of "background" and "low-grade" in the context of that alleged symptoms presents an ambiguity which the ALJ must resolve. Although "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence," *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022), the ALJ must nevertheless "set forth the reasoning . . . in a way that allows for meaningful review," *Brown-Hunter v. Colvin*, 806 F.3d 486, 492 (9th Cir. 2015), that led it to resolve those ambiguities in a particular way. The ALJ erred by failing to do so in this case.

---

[2] The ALJ evaluated this statement and concluded it was a statement on an issue reserved to the Commissioner that need not be considered. AR 25. Plaintiff does not challenge this determination. *See* Dkt. 9.

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 5

2.      Objective Medical Evidence

The ALJ found that Plaintiff's testimony was further inconsistent with objective medical evidence. AR 21–24. The ALJ found Plaintiff's testimony inconsistent with the following:

> [1] the reports of mostly stable MEN and diabetes during the period at issue, [2] the limited history of fractures, [3] the limited observations of fatigue, [4] the observations of normal strength without signs of muscle loss, [5] the limited reports of difficulty with concentration and memory and [6] the lack of observations showing signs of difficulty with cognitive functioning . . . .

AR 23. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498 (emphasis in original). But "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony." *Id.* (citing *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

The ALJ's duty to set forth his reasoning "in a way that allows for meaningful review," *Brown-Hunter*, 806 F.3d at 492, requires building an "accurate and logical bridge from the evidence to [the ALJ's] conclusions." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). The ALJ failed to do so here. For instance, the ALJ failed to explain, and the Court cannot discern, why having "stable MEN and diabetes" is inconsistent with Plaintiff's symptoms of nausea, vomiting, and diarrhea. "[A] doctor's notation that a condition is 'stable' during treatment does not necessarily support the conclusion that the patient is able to work." *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (9th Cir. 2008); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("[O]bservations must be read in context of the overall diagnostic picture . . . .") (cleaned up).

Similarly, the purportedly limited reports of fatigue, concentration, and memory difficulties are not necessarily inconsistent with Plaintiff's testimony. An ALJ cannot discount

Plaintiff's testimony simply because objective medical evidence did not corroborate all parts of it. *Smartt*, 53 F.4th at 498. While some notes indicate Plaintiff did not report fatigue at some appointments (AR 339, 410, 423–24), she did so at others (AR 321, 441). "Symptoms wax and wane in the course of treatment" and "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017.[3]

Defendant also points to treatment notes which "consistently found that [Plaintiff] was well nourished, well developed, in no acute [distress], [and] fully oriented." Dkt. 14 at 7. Defendant does not explain why these findings are inconsistent with Plaintiff's testimony and not merely indicia that certain common explanations of her symptoms were ruled out. Indeed, many such notes also acknowledge Plaintiff's episodes of nausea, vomiting, and diarrhea, suggesting that such notes are not inconsistent with her testimony regarding those symptoms. *See e.g.*, AR 284 ("chronic nausea, chronic diarrhea" and "extensive GI history"); AR 339–40 ("seen for nausea, vomiting, and abnormal CT"); AR 906 ("nausea 5-6 days a week" and "episodes of vomiting 1-2 times a month"); AR 921 (same); AR 938 (same); AR 1284 (same); AR 1289 (same); AR 1299 ("Problem #1: Nausea and Vomiting").[4]

---

[3] The Court need not consider whether the ALJ's findings as to the "limited history of fractures" and "the observations of normal strength without signs of muscle loss" were in error. At the very most, both findings appear to only be inconsistent with Plaintiff's testimony that her osteoporosis makes her prone to increased fractures, but not with her testimony of nausea, vomiting, and diarrhea. On remand, the ALJ is directed to reevaluate all of Plaintiff's subjective symptom testimony.

[4] Defendant also points to treatment notes in which "Plaintiff routinely denied experiencing fatigue, nausea, vomiting, diarrhea, and altered mental status." Dkt. 14 at 7. For the most part, these notes appear to indicate Plaintiff was not experiencing these symptoms at the appointment. *See e.g.*, AR 453 ("She denies *current* nausea or vomiting.") (emphasis added). Indeed, many of the notes Defendant points to still confirm Plaintiff is still experiencing persistent nausea. *See e.g.*, AR 321 ("chronic nausea, chronic dairrhea"); AR 453 ("persistent nausea and vomiting"); 925–28 ("nausea 6–7 days a week").

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 7

3.     Activities of Daily Living

The ALJ found that Plaintiff's "activities of daily living are at least somewhat less limited than would be expected given her allegations of disabling symptoms and limitations." AR 24. The ALJ pointed to the following evidence: (1) Plaintiff's household activities, such as doing light housework, caring for her pet, and cooking; (2) treatment notes indicating Plaintiff volunteered for a nonprofit; and (3) two trips Plaintiff went on. *Id.* (citing AR 223–25, 915, 1276, 903, 909, 1313). Activities of daily living are a valid reason to discount Plaintiff's testimony if they are either transferrable to a work setting or inconsistent with her alleged symptoms. *See Orn v. Astrue*, 495, F.3d 623, 639 (9th Cir. 2007). Plaintiff need not "be utterly incapacitated to be eligible for benefits." *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).

The ALJ did not find that any of her activities were transferrable to a work setting, and none of them are inconsistent with her limitations. Plaintiff's household activities are not inconsistent with her allegations of debilitating nausea in the morning, since she performs those activities in the afternoon when she is "feeling [her] best" (AR 224), they do not require the attention and memory she alleges are in decline, and they are performed in her own home, allowing her immediate restroom access if she has an episode of incontinence.

Plaintiff ended her volunteer activities due to her symptoms (AR 43) and the record reflects that her vacations exacerbated her symptoms (*see* AR 903, 1313, 1315). This is consistent with those symptoms being debilitating. C*f. Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) ("It does not follow from the fact that a claimant tried to work . . . and, because of [her] impairments, failed, that [s]he did not then experience pain and limitations severe enough to preclude . . . substantial gainful employment.").

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 8

1    The only evidence in the record pertaining to Plaintiff's vacations are brief mentions in

2    treatment notes which do not elucidate her activities on those vacations. *See* AR 24 (citing AR

3    903, 909, 1313). These notes provide little information about Plaintiff's activities on these

4    vacations, making it difficult for the Court to discern, without further explanation by the ALJ,

5    why they were inconsistent with Plaintiff's testimony.

6        4.    <u>Conservative Treatment</u>

7    According to Defendant, "[t]he ALJ . . . noted that Plaintiff's claims of disabling

8    symptoms were inconsistent with her conservative treatment regimen, which was confined

9    chiefly to acid reflux medication and other prescription drugs, as well as recommendations to

10   exercise regularly." Dkt. 14 at 8. The ALJ mentioned twice in the relevant part of his decision

11   that Plaintiff's acid reflex prescription was "routine treatment" (AR 22, 23) and did not indicate

12   this was a reason he discounted Plaintiff's testimony (*see* AR 21–23). The Court "review[s] only

13   the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a

14   ground upon which he did not rely." *Garrison*, 759 F.3d at 1009.

15   Nonetheless, Plaintiff's purportedly conservative treatment does not constitute a clear and

16   convincing reason to discount her testimony in this case.[5] "[P]rescrib[ing] only 'conservative

17   treatment' . . . suggest[s] a lower level of both pain and functional limitation." *Johnson v.*

18   *Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995); *see also Parra v. Astrue*, 742, 751 (9th Cir. 2007).

19   But this is not so "where the claimant has a good reason for not seeking more aggressive

---

[5] The ALJ only noted that Plaintiff's treatment was "routine" in the context of a single acid reflux drug, which is purportedly routine treatment for nausea. AR 22, 23. Defendant, however, argues that the entirety of Plaintiff's treatment regimen was "conservative." Dkt. 8 at 14 (describing regimen as "confined chiefly to acid reflux medication and other prescription drugs," answering argument that there was "no other treatment available for [Plaintiff's] MEN and other impairments"). It is unclear whether Plaintiff's entire treatment regimen—which involved taking 31 pills each day including a "morning drug cocktail, when [she] feel[s] [she] will keep them down" (AR 224)—is a "conservative treatment" serving to discredit Plaintiff's allegations.

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 9

treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). For that reason, "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist." *LaPeirre-Gutt v. Astrue*, 682 F. App'x 662, 664 (9th Cir. 2010) (unpublished opinion). "[A]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017).

In this case, "the record does not reflect that more aggressive treatment options are appropriate or available," *LaPierre-Gutt*, 682 Fed. App'x at 664, for Plaintiff's MEN or her symptoms of nausea, diarrhea, and vomiting. Indeed, the record reflects that Plaintiff's symptoms were sometimes exacerbated by certain additional treatments (*e.g.*, AR 605, 627, 933), suggesting that additional treatment options were not available to her.

Defendant argues that Plaintiff's statement that no more aggressive forms of treatment are available "is merely [Plaintiff's] own inexpert assumption" and not based on the view of any medical source. Dkt. 14 at 8. This argument mistakenly assumes that Plaintiff had a burden to show that her treatment regimen was the most aggressive one available. Although it is Plaintiff's "duty to prove that she was disabled," the ALJ must still "develop the record further" when it is "inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). If the ALJ wished to discount Plaintiff's testimony due to her purportedly conservative treatment regimen, he must have "take[n] into account the condition being treated." *Revels*, 874 F.3d at 667. The lack of evidence in the record suggesting that a more aggressive regimen available reveals that the nature of Plaintiff's condition was not adequately considered, or at the very least, that the record was not developed to allow for the proper evaluation of her condition.[6]

---

[6] This is not to say that an ALJ always errs in failing to inquire about why a claimant forewent a more aggressive treatment regimen. But in this context—where Plaintiff is diagnosed with a rare impairment, takes 31 pills each day

5.      Inconsistent Statements

Plaintiff made inconsistent statements about why she left her job in 2016. *Compare* AR 211 (indicating she stopped working "because of [her] condition(s)") *with* AR 46 (testifying she left job because "[she] was moving to Washington State, but [she] did not realize at the time [she] was having a lot of difficulties at work"). An ALJ can consider "prior inconsistent statements" in rejecting a claimant's testimony. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). But a single inconsistent statement is not "adequate to support" the decision. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Schow v. Astrue*, 272 F. App'x 647, 652–53 (9th Cir. 2008) (unreported earnings were "proper for consideration, but hardly compel[led] the adverse credibility finding"). Thus, even if the ALJ properly considered Plaintiff's inconsistent statements, this alone is insufficient to render the other errors the ALJ made in evaluating Plaintiff's subjective testimony harmless.

6.      Harmless Error

The Court has found that the ALJ committed error in rejecting Plaintiff's testimony. An error is harmless only if it is not prejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The ALJ found Plaintiff capable of light work with no additional non-exertional limitations (AR 20) and relied upon this in finding Plaintiff could perform her past work (AR 26). Plaintiff's testimony alleged nausea and cognitive issues which could impact her ability to perform work, particularly the semi-skilled work that she previously performed. Thus, the Court "cannot say . . . that 'no reasonable ALJ, when fully crediting the testimony,

---

(AR 224), and has alleged adverse reactions to some treatments (AR 47–48, 605, 627, 933)—the ALJ did err in discounting Plaintiff's testimony without seeking any information about the nature of the condition or Plaintiff's ability to withstand more aggressive treatment.

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 11

could have reached a different disability determination," and finds that the ALJ's error was not harmless. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout*, 454 F.3d at 1056).

**B.    Duty to Develop Record**

Plaintiff argues the ALJ did not meet his duty to adequately develop the record and should have sought input from an additional medical source. Dkt. 7 at 3–4, Dkt. 15 at 2–4.

1.    <u>Issue Exhaustion</u>

Defendant first argues this contention was forfeited because Plaintiff's attorney did not ask the ALJ to obtain additional medical evidence and confirmed that the record was closed, which, Defendant argues, was inadequate to preserve the issue. Dkt. 14. at 4. Generally, "claimants . . . must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended); *see also Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017).

However, the Ninth Circuit has not applied this rule where the alleged error goes to an affirmative duty held by an ALJ. For instance, the Ninth Circuit did not apply this rule to an error alleged with respect to an ALJ's duty to reconcile certain conflicts between the Dictionary of Occupational Titles and a Vocational Expert's testimony. *See Lemear v. Berryhill*, 865 F.3d 1201, 1205–06 & n.5 (9th Cir. 2017) ("[A] counsel's failure does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning.") (citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) ("[Plaintiff] was not required to raise this issue at the hearing, because the Ruling places the burden of making the necessary inquiry on the ALJ.")).[7]

---

[7] Indeed, an exhaustion requirement would make little sense in such a context. "'[T]he rationale for requiring issue exhaustion is at its greatest' when 'the parties are expected to develop the issues in an adversarial administrative

Because the error alleged here is with respect to an ALJ's "affirmative responsibility to develop the record," *Celaya v. Halter*, 332 F.3d 1177, 1184 (9th Cir. 2003), the Court does not find that this argument was forfeited.

2. <u>Failing to Consult a Medical Expert</u>

The ALJ "has an independent duty to fully and fairly develop the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (cleaned up). "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing *Tonapetyan*, 242 F.3d at 1150). But the ALJ's duty to develop the record cannot be used to shift the burden of proving disability onto the ALJ. *See Mayes*, 276 F.3d at 460; *Gray v. Comm'r. of Soc. Sec. Admin.*, 365 Fed. Appx. 60, 63 (9th Cir. 2010) (unpublished opinion).

The Court has noted above several areas in which the record was "inadequate to allow for proper evaluation of the evidence" or was otherwise ambiguous, triggering the ALJ's duty to further develop the record. *Mayes*, 276 F.3d at 460. These areas include whether Plaintiff's nausea "subsiding" is inconsistent with her allegations of debilitating nausea and frequent vomiting and whether Plaintiff's condition could be treated more aggressively.

---

proceeding.'" *Carr v. Saul*, 593 U.S. 83, 89 (2021) (quoting *Sims v. Apfel*, 530 U.S. 103, 110 (2000)). "[T]he differences between courts and agencies are nowhere more pronounced than in Social Security proceedings" precisely because the ALJ has certain non-adversarial duties, like his "duty to investigate the facts and develop the arguments." *Id.* at 89–90 (quoting *Sims*, 530 U.S. at 110 (plurality opinion)). The parties are not expected to develop—through adversarial means—the issue of whether the ALJ met an affirmative duty in the very proceeding in which the ALJ is expected fulfill that duty. Rather, claimants raise issues and submit evidence under the assumption that the ALJ will fulfill those duties prescribed by the regulations.

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 13

However, the Court does not find the ALJ erred in failing to seek input from a Medical Expert.[8] Plaintiff cites no authority supporting her contention that the ALJ was required to do so in this circumstance. *See* Dkt. 7 at 3–4. The finding of ambiguities and insufficient evidence in the record does not compel such a determination. "Ambiguous evidence . . . triggers the ALJ's duty to conduct an appropriate inquiry," but there are "several ways" that the ALJ may "discharge this duty." *Tonapetyan*, 242 F.3d at 1150 (citations omitted). The decision to obtain evidence from a medical expert or to order a consultative exam is generally discretionary. *See* 20 C.F.R. §§ 404.1513a(b)(2), 404.1520b(b)(2); *see also* HALLEX 1-2-5-34 (obtaining a medical expert opinion discretionary except under limited circumstances). "[A]n ALJ is not required to seek additional medical testimony to resolve every ambiguity or inconsistency in the medical evidence." *Silva v. Colvin*, 2015 WL 5675541 (W.D. Wash. Aug. 31, 2015) (citing 20 C.F.R. § 404.1520b).[9]

Contrary to Plaintiff's contention that the ALJ was "not competent to interpret the significance of" certain medical evidence, Dkt. 7 at 3, there is "a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); *see also Hardin v. Kijakazi*, 2023 WL 6567890 (9th Cir. Oct. 10, 2023) (unpublished opinion). To require an ALJ to call a medical

---

[8] Commissioner is not foreclosed from exercising its discretion to seek input from a Medical Expert or to order a consultative exam on remand.

[9] Indeed, the Ninth Circuit has ordered a medical expert only where there has been an ambiguity about the onset date and has done so only because a since-rescinded Social Security Ruling required a medical expert in such a circumstance. *See Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017) ("Relying on SSR 83-20, we have held that where a record is lacking and ambiguous as to the onset date of disability, 'the ALJ must call a medical expert to assist in determining the onset date.'") (quoting *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998)); SSR 18-1p ("SSR 83-20 is completely rescinded by [this SSR]. . . . [T]his SSR clarifies that an [ALJ] may, but is not required to, call upon the services of a medical expert (ME), to assist with inferring the date that the claimant first met the statutory definition of disability.").

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 14

expert to interpret the significance of medical evidence "would essentially require ALJs to acquire medical expert testimony in the majority of their cases," a result that is "unrealistic and clearly not the intended procedure." *Redmond v. Colvin*, 2014 WL 12665726 at *7 (W.D. Wash. Sept. 29, 2014). That the ALJ in this case erred in evaluating the medical evidence does not mean that the ALJ must have consulted a medical expert.

## IV. CONCLUSION

For the reasons set forth above, this matter is **REVERSED and REMANDED** for further administrative proceedings.

Dated this 11th day of January, 2024.

Grady J. Leupold
United States Magistrate Judge

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 15